IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | **CRIMINAL NO. 1:08-CR-0383** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **TIMOTHY S. PATTERSON**, | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the court is defendant Timothy S. Patterson's motion (Doc. 26) to suppress evidence seized during a warrantless search of a vehicle he was operating on October 15, 2008. The court held an evidentiary hearing on defendant's motion on February 25, 2009, (see Doc. 41 at 1), after which the parties filed supplemental briefs in support of their respective positions, (see Docs. 46, 47). For the reasons that follow, the motion will be denied.

**I.    Findings of Fact**[1]

On October 22, 2008, defendant was indicted by a grand jury. The indictment contains three counts and charges defendant with (1) possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) intentional and knowing possession, carrying, and use of a firearm during, in relation to, and in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and (3) being a felon in possession of a firearm that was transported in interstate

---

[1] These findings are based on testimonial and documentary evidence presented at the hearings on the motion. The findings substantially reflect the testimony given by the parole officer who performed the search, Tom Walton, an individual the court finds credible.

commerce, in violation of 18 U.S.C. § 922(g)(1).  (See Doc. 1.)  On October 28, 2008, defendant entered a plea of not guilty to the indictment.  (See Doc. 14.)  The allegations in the indictment arise from the seizure of a firearm and cocaine base, discovered by parole officers on October 15, 2008 during the search of an automobile recently occupied by defendant.  On December 3, 2008 defendant filed a motion to suppress the fruits of that search.

The events underlying defendant's indictment date back to April 2008, when defendant—a parolee serving a term of intermediate punishment[2]—was released to the custody of Dauphin County Adult Supervision and Parole.  (See Doc. 41 at 4.)  Defendant was thereafter placed on electronic monitoring, under which he agreed to several supervisory conditions, to wit:  random search of his person, property, and place of residence; to refrain from acquiring, carrying or possessing pagers, cellular telephones, police scanners, and cash in excess of $50 without a valid receipt; and to regularly update his parole officer regarding his employment prospects and work schedule.  (Id. at 7; id., Exs. A-C.)  Additionally, defendant was not permitted to leave his residence for any non-employment purpose.  (Doc. 41 at 7.)  With respect to each of these conditions, defendant signed consent forms indicating that he understood and acquiesced in the relevant provision.  (See id., Exs. A-C.)

---

[2] Intermediate punishment is a restrictive form of probation supervision. (Doc. 41 at 7.)  Defendant was convicted in state court on felony drug charges and sentenced in May 2006 to thirty-six months of intermediate punishment.  (See Doc. 41 at 4.)

Parole officer Kelly Evans testified that defendant's compliance with the terms of his supervision was "terrible" and that he "violated [the terms] quite often." (Id. at 8.) On July 2, 2008, defendant removed the electronic monitoring device from his person and discarded it in a wooded area off East Park Drive in Harrisburg, Pennsylvania. (Id. at 9.) A warrant was subsequently issued for defendant's arrest on July 7, 2008, (id. at 9-10), and the United States Marshal's Fugitive Task Force was charged with locating and detaining him. (See id. at 12-13.) The Marshals made several unsuccessful attempts to apprehend defendant over the next several months. (Id. at 13.)

In the fall of 2008, parole officer Tom Walton ("Walton") was working with the Marshal's Task Force on a warrant detail, one target of which was defendant. (Id. at 12-13.) Walton testified that the Marshals received information indicating that defendant was living with his girlfriend in the President's Drive housing projects in Hummelstown, Pennsylvania. (Id. at 13.) In addition, the Marshals learned that defendant was driving a gray Cadillac with a landau top. (Id.) Armed with this information, Walton and another parole officer, Anderson,[3] traveled to the President's Drive housing projects at 6:30 a.m. on October 15, 2008. (Id. at 14.) Walton observed a gray Cadillac parked outside of building number one that matched the description obtained by the Marshals. (Id.) The two officers surveilled the area for approximately an hour, during which time no one approached the

---

[3] The record does not contain parole officer Anderson's forename.

vehicle and Walton observed no unusual activity. (Id.) The officers then left the scene. (Id.)

Walton and Anderson returned to the housing complex at 11:45 a.m. and noticed that the Cadillac was parked in a different location outside of building number one. (Id. at 15.) After watching the area for forty-five minutes, defendant emerged from building number one carrying a small child in his arms. (See id.) Walton estimated that he was approximately 100 yards from defendant at this time and stated that "[t]he general description that we had of [defendant], it matched the gentleman that was coming out [of building number one]." (Id.) Defendant advanced toward the Cadillac, entered on the driver's side, sat the child on the center console, and started the ignition. (See id. at 15-16.) Once defendant entered the vehicle, Walton and Anderson approached. (Id. at 15.) Walton testified that defendant was inside the Cadillac with the engine running for "[m]aybe fifteen to twenty seconds" before the officers reached the vehicle. (See id. at 25-26.) Walton added, "once [I] got close enough to the car I could see that it was [defendant] in the driver's seat." (Id. at 16.)

Walton ordered defendant to remove the keys from the ignition and exit the vehicle. (Id. at 17.) Defendant complied with respect to the keys, but "grabbed his son" and refused to exit the Cadillac. (Id.) Walton then opened the driver's side door, grabbed one of defendant's arms, and pulled him out of the vehicle. (See id.) Defendant continued to hold onto the child with his other arm, but as soon as defendant was outside of the vehicle, Anderson removed the child from his

possession.  (See id. at 17, 34-35.)  Walton then placed defendant in handcuffs and searched his person, discovering $480 in twenty-dollar bills, a small bag of marijuana, and a partially-used marijuana cigarette.  (Id. at 17-18.)

As Walton was conducting the search, two unidentified females approached the scene.  (See id. at 18.)  The record is unclear from whence these individuals came, but they approached Walton from behind as he was searching defendant.  (See id. at 28, 35.)  Walton described the scene as follows:

> When Mr. Anderson grabbed the child, at that point I handcuffed [defendant] and immediately began to search his person.  At that point I heard the young ladies behind me asking what was going on.  I don't recall exactly what they said, but at some point between me pulling [defendant] out of the vehicle and searching him they had exited [building number one] and come up behind me.

(Id. at 35.)  Walton explained to the two females that defendant was under arrest and instructed them to vacate the scene.  (Id. at 18.)  The two females began to speak to defendant, however, and he instructed them "not to say anything" and to "get into the vehicle and leave."  (See id. at 18-19, 35.)  Defendant repeated this instruction two or three times.  (Id. at 18-19, 36.)

In the midst of this exchange, Anderson informed Walton that there was a firearm resting in the driver's side door compartment of the Cadillac.  (Id. at 19.)  Anderson apparently observed the weapon after defendant was removed from the vehicle and the driver's side door was left ajar.  (See id.)  Walton testified that "[a]s soon as [Anderson] advised me that there was a gun in the door I looked at the door and it was very visible."  (Id.)  Walton immediately placed defendant into the back

seat of the officers' vehicle and Anderson contacted county communications to procure assistance from a Swatara Township police officer.  (Id. at 19, 36.)  Neither Walton or Anderson touched the firearm.  (See id. at 20.)  Swatara Township police officers arrived approximately ten minutes later and took possession of the weapon. (Id.)

After the officers arrived, Walton requested defendant's permission to search the interior of the Cadillac.  (Id. at 30.)  Defendant refused, claiming that he was not the vehicle's owner and therefore was unable to grant the request.  (Id. at 20.) Walton asked for permission several times more, but defendant repeatedly refused. (See id.)  Walton then searched the vehicle without defendant's consent.[4]  (Id. at 20-21.)  In the center console, Walton discovered two small plastic bags; the first contained "a small amount" of marijuana and the second contained crack cocaine. (Id. at 21.)  Walton thereafter contacted the Dauphin County Drug Task Force and ceded control of defendant to the Swatara Township police.  (See id.)

**II.   Discussion**

With limited exceptions, the Fourth Amendment's prohibition against "unreasonable searches and seizures" requires officials to obtain a warrant before searching persons or property.  See United States v. Arvizu, 534 U.S. 266, 573 (2002).

---

[4] Walton testified that the "total circumstances" led him to "believe that there could possibly be other criminal activity parole violations within the vehicle."  (Doc. 41 at 21.)  Specifically, Walton mentioned defendant's "adamant comment to the females about taking the car and leaving, [and] finding a small amount of drugs and drug paraphernalia" when he searched defendant's person.  (Id. at 20-21.)

Officers effectuating an arrest may conduct a "contemporaneous search without a warrant of the person arrested and of the immediately surrounding area" pursuant to the search incident to arrest exception. New York v. Belton, 453 U.S. 454, 457 (1981); Chimel v. California, 395 U.S. 752, 762-63 (1969). When the arrestee is the occupant or recent occupant of a vehicle, an officer may search the interior of the vehicle contemporaneous with the arrest. Thornton v. United States, 541 U.S. 615, 622 (2004). Underlying the search incident to arrest exception is the need to ensure officer safety; as the Supreme Court has explained, "[a] custodial arrest is fluid and 'the danger to the police officer flows from *the fact of the arrest*, and its attendant proximity, stress, and uncertainty.'" Id. at 621 (emphasis in original) (quoting United States v. Robinson, 414 U.S. 218, 234-35 (1973)).

Defendant argues that the search incident to arrest exception is inapplicable to the facts surrounding his arrest. According to defendant, he "approached the vehicle and placed a child into the vehicle, but was not inside the vehicle at the time of the arrest." (Doc. 27 at 3-4.) This assertion is plainly contradicted by the evidence presented in court. Walton testified that defendant was sitting in the driver's seat with the engine running for approximately fifteen to twenty seconds. (See Doc. 41 at 15-16; 25-26.) The court finds this uncontradicted testimony to be credible. Therefore, when defendant was placed under arrest, he was a recent occupant of the Cadillac, rendering the interior compartment searchable and the

firearm and cocaine base admissible pursuant to the search incident to arrest exception.[5]

What is more, the situation confronted by Walton and Anderson was one in which they had reason to fear for their well-being. Defendant's firearm was readily accessible in the driver's side door compartment when he was arrested. After Walton removed defendant from the vehicle, he was approached from behind by two unidentified females. Walton ordered these individuals to vacate the scene, but defendant repeatedly instructed them to "get into the vehicle and leave." (Doc. 41 at 18-19.) It was imperative that the officers secure the scene at this point; they did not know what was inside the vehicle, why defendant was insisting that the females get inside and drive away, or whether other individuals were nearby. Had either of the females approached the Cadillac, an as-yet unrecovered firearm was ready for the taking. This combination of variables posed a serious safety risk to the officers, and clearly implicates the search incident to arrest exception's *raison d'etre*. See, e.g., Thornton, 541 U.S. at 620 (explaining that Belton "was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape").

---

[5] Defendant also contends that the seized firearm was not in plain view when discovered. Specifically, he argues that Walton "did not and could not see the gun on his own. Instead, the car door had to be opened for him to see it." (Doc. 46 at 9.) The fact that Walton performed the search incident to defendant's arrest, however, is sufficient to justify admission of the evidence, and a showing that the firearm was in plain view is unnecessary. Belton allows an arresting officer to examine the interior of the vehicle, including the contents of containers found therein. See Belton, 453 U.S. at 460-61. As a result, the firearm's location in the vehicle's interior allows its admission irrespective of the extent to which it was in "plain view" when seized.

Thus, the court finds that the search was entirely reasonable given the legitimate security concerns presented by the developing arrest scenario.

In the alternative, defendant claims that he was subject to a "pretextual search—that the police engineered the circumstances that they now attempt to use to justify the search." (Doc. 46 at 4.) Specifically, defendant argues that Walton and Anderson *could have* arrested him as he walked from building number one to his vehicle, but that they chose not to do so. Defendant explains, "Rather than arrest [defendant] without incident in an open parking lot, . . . they decided to wait until he was in the vehicle to conduct the arrest and then searched the vehicle pursuant to that arrest." (Id.) In this way, defendant claims that the officers' failure to arrest him before he entered the Cadillac was unconstitutional. The government's response asserts that inquiry into the subjective motivation of an arresting officer is impermissible, and exhorts the court to focus solely on whether the arrest was lawful. (See Doc. 47 at 2.)

Defendant does not dispute the validity of the warrant by which he was arrested. He does not challenge the government's characterization that he was a parolee, subject to random search, seizure, and arrest. Nor does defendant dispute that he unlawfully removed the electronic monitoring device from his person, precipitating government efforts to find and arrest him. Defendant simply objects to the timing of his arrest on October 15, 2008. Such objection is without merit. In general, an officer's subjective motivation is incapable of invalidating behavior that is objectively justifiable. See Whren v. United States, 517 U.S. 806, 812-13 (1996)

9

(rejecting subjective motivation inquiry in the context of a traffic stop and holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); see also United States v. Bellinger, 343 F. Supp. 2d 417, 419 (E.D. Pa. 2004) (rejecting subjective intentions inquiry when officer had probable cause to stop defendant's vehicle). Because Walton and Anderson carried a valid arrest warrant, defendant cannot contend that his arrest was objectively unjustifiable. The warrant did not require that Walton and Anderson effectuate the arrest on the sidewalk outside of building number one.[6] Rather, defendant was arrested in a location where it was lawful for the officers to do so. The arrest was objectively justifiable and defendant's complaints will be rejected.

---

[6] In addition, Walton's testimony reveals initial uncertainty regarding defendant's identity. When he saw defendant emerge from building number one, Walton stated that "[t]he general description that we had of [defendant], it matched the gentleman that was coming out." (Doc. 41 at 15.) Aside from this physical description, however, Walton's sole means of identifying defendant was by way of the gray Cadillac that defendant was allegedly utilizing. In order to connect the individual exiting building number one with the Cadillac parked outside, it was necessary for the officers to ensure that defendant actually approached and entered the Cadillac. Once they observed him do so, Walton advanced closer to verify defendant's identity. (See id.) It was only at this juncture that Walton was able to confirm that the individual exiting building number one was indeed defendant. (See id. at 15-16 ("Once they entered the vehicle we approached it to verify, to identify the person, and once we got close enough to the car I could see that it was [defendant] in the car driver's seat.")). The court finds this course of conduct entirely reasonable and the proffered explanation cuts squarely against defendant's accusation of impermissible pretext.

**IV.**     **Conclusion**

The search of defendant's vehicle incident to his arrest was not performed in violation of the Fourth Amendment.  Defendant's motion to suppress must therefore be denied.

An appropriate order will issue.

          S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        April 8, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : CRIMINAL NO. 1:08-CR-0383 |
| v. | : (Judge Conner) |
| **TIMOTHY S. PATTERSON**, | : |
| **Defendant** | : |

## **ORDER**

AND NOW, this 8th day of April, 2009, upon consideration of defendant's motion to suppress evidence (Doc. 26) and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 26) is DENIED.

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge